UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2023 JAN -6  PM 3: 08

_____

KAHREEM PERRY,

                 Plaintiff,


       -against-

STEVEN VEGA, Police Officer
MYLES LEONARD, Police Officer,
SAJIT TOMY, Police Officer,
THOMAS MCCUE, Police Officer,
KIRK BIRMELIN, Police Sergeant,

               Defendant.

_____

                         **AMENDED COMPLAINT**


                   Docket No.:22-CV-5813(VEC) (SN)

### *STATEMENT OF CASE*

    This is a civil action against law enforcement officials pursuant to 42 U.S.C 1983, claiming ***false arrest and false imprisonment***, in that police officials violated Plaintiff's ***Fourth Amendment*** right, guaranteed by the United States Constitution, and their failure to intervene to stop the Constitutional violation.

### *PARTIES*

1. Plaintiff, ***KAHREEM PERRY*** ("Perry") is a detainee at the Riker's Island City Jail, currently residing at AMKC, 18-18 Hazen Street, East Elmhurst, New York, 11370. Perry has previously filed 1983 suits under the name **KAREEM PERRY**, with the agency number 93-A-5130.

2. Defendant ***STEVEN VEGA***, was at all relevant times herein , a police officer of the New York City Police Department ("NYPD"), located at PSA

4 130 Avenue C New York County 10009. He is sued in his individual capacity.

3. Defendant *MYLES LEONARD*, was at all relevant times herein, a police officer of the NYPD, located at PSA 4, 130 Avenue C, New York County 10009. He is sued in his individual capacity.

4. Defendant, *SAJIT TOMY*, was at all relevant times herein a police officer of the NYPD, located at PSA 4, 130 Avenue C, New York County,10009. He is sue in his individual capacity.

5. Defendant, *THOMAS MCCUE*, was at all relevant times herein, a police officer of the NYPD., located at PSA 4, 130 Avenue C, New York County, 10009. He is sued in his individual capacity.

6. Defendant, *KIRK BIRMELIN* (" Sgt. Birmelin"), was at all relevant times herein, a police sergeant of the NYPD, located at PSA 4, 130 Avenue C, New York County 10009. He is sued in his individual capacity.

## STATEMENT OF FACT

7. Complainant Victim *IVETTE AGOSTO* (""Agosto") and her son, Complainant Victim *DAVID ROBLES* ("Robles") contacted the police claiming that they were robbed in their home at gunpoint. Agosto stated to the police that, On October 23,2021, at 3:23 AM, she was returning from emptying the trash in her apartment building located at 388 Pearl Street, New York County, when Perry approached her with a gun. This occurred in a well-lighted hallway. As Agosto backed into her apartment, Perry

allegedly followed her inside, where her son, Robles, was watching TV. Robles allegedly gave Perry $20 and Perry fled. Responding officers, including all of the defendants herein, arrived and received a description of the perpetrator.

8. Officer Leonard's body worn camera (BWC) show Leonard asking Agosto and Robles, "did he [the perpetrator] have any facial hair?" Leonard's BWC show Agosto *did not* respond. Leonard's BWC show Robles answer "I don't know, it happened so fast." Hearing her son, Agosto parroted "yeah, it happened so fast."

9. At the time of Perry's arrest, he had both beard and mustache. ***EXHIBIT A: PERRY'S ARREST PHOTO***

10. Leonard's BWC show Leonard asking "do you know what his skin complexion is?" Again, Agosto *do not* reply. Robles answered that he did not.

11. Leonard's BWC show Vega telling Leonard that the perpetrator "is in his 40's."

12. Leonard and Tomy canvassed the building of 388 Pearl Street. On the 15th floor (complainants live on the 4th) Leonard and Tomy came upon Perry. They informed Perry that he fit the description of someone who just committed a crime in the building. Leonard called officer Vega, stating that a person fitting the description has just been detained and to bring Robles up for identification.

13. Leonard told  officer Vega "bring the son up, not the mother", to which he was told that the son, Robles, did not want to come up. Leonard responded "tell him he  don't have to come on the floor, just look through the window in the stairwell." Robles did not come up to identify Perry.

14. Agosto, however, did show up to identify Perry. On the elevator ride up to the 15th floor, Sgt. Birmelin asked Agosto "did you get a good look at his face?" Agosto indicated she did not, repeating what her son said, "it was so fast." Her *only* description to Sgt. Birmelin about the  person who robbed her was that "he was about my height" but not stating to Sgt. Birmelin what her "height" is.  Both Vega and Mccue were in the elevator with Agosto when she informed Sgt. Birmelin that she did not get a good look at the culprit's face.

15. Once on the 15th floor, Vega took a picture of Perry with his cell-phone and showed it to Agosto, asking "is that him?" Agosto stared at the photo, uncertain,  for 5 seconds and responded "it looks like him, but he changed his clothes."

16. After Agosto failed to identify Perry, and Robles was obdurate in his refusal to identify Perry, Leonard's, Mccue's and Tomy's BWC show that Perry was not free to leave. The defendant's BWC's show Perry asking "am I still being detained?" The defendants' BWC's show Leonard replied "yes."

17. The defendants' BWC's show Leonard, Mccue and Tomy surrounding Perry, barring all movement.

18. Perry was not Mirandized by any of the defendants' once he was denied to leave, and the interrogation began.

19. After Agosto failed to identify Perry, Perry asked Defendant Leonard why was he still being held since Agosto didn't say he was responsible for the crime. Leonard stated to Perry "she didn't say you did it...we're just trying to figure something out."

20. Exactly 17 minutes after Agosto failed to identify Perry, Perry was arrested.

21. Perry was arrested, charged, arraigned and indicted for, *inter alia*, **ROBBERY and BURGLARY IN THE FIRST DEGREE,** based upon a defective Felony Complaint. ***EXHIBIT B: FELONY COMPLAINT***.

22. The basis for the probable cause  at the time of  Perry's arrest was a purported identification of Perry made by Agosto after viewing the show-up photo.

23. The purported identification of Perry, reported by Vega, *in his own handwriting*, states "show-up conducted w/positive results." ***EXHIBIT C: VEGA'S REPORT***.

24. There was never "a show-up conducted w/positive results." The positive identification report is  fabricated. The Data Sheet, "screened on 10/23/2021 by Barbour, Bradley" of the District Attorney Office of New York (DANY), documented the actual occurrence during the identification procedure, as shown on Mccue's BWC. The Data Sheet states "show-up with Agosto, showed photo of [defendant] in hallway, said 'that looks like

him, but he changed his clothes'--"son [Robles] refused to come up to ID"

*EXHIBIT C: DATA SHEET.*

25. This is a one-witness identification case where the sole purported identifying witness is Complainant Witness Ivette Agosto, because Complainant Witness, David Robles  refused to identify Perry.

26. Although Agosto and Robles stated to the police that they could not identify any *natural* physical features of Perry because the incident "happened so fast", at the Grand Jury however, Agosto, in fact, testified quite differently. Agosto testified that after Perry took the money off of a table, he then "backed up *going slowly*, backing up out of the house." [AGOSTO GJ:22].

27. It is important to note that it would be *physically impossible* for the person in the photo to "look like him," the robber, when Agosto was not able to identify any natural physical features of the alleged gunman, since she never did "get a good look at his face." Further, it would be impossible to tell whether the robber was "in his 40's" when, in fact, Agosto did not "get a good look at his face." To make such an observation, two people must be face-to-face. Age estimate cannot be determined by someone's height. It is also important to note that the age guesstimate was provided by Robles *not* Agosto.

28. In sum, Agosto  was approached by a man with a gun in the hallway of her apartment building. The man wore no mask. Agosto had her assailant under close-up observation , as she was in close proximity to the gunman. There was no lack of physical visual opportunity to see and remember. There was

ample opportunity to observe the robber during the commission of the crime until flight. Given the ample time and opportunity to observe her assailant, the *closeness* of the assailant for several minutes from the time of the crime until the robber fled, *the identification should have been certain*. Yet, Agosto *did not* know the skin complexion of her assailant; she *did not* know whether the robber "had any facial hair", because she *did not* "get a good look at [the perpetrator's] face", even though the perpetrator, after allegedly invading her home, "*backed up, going slowly*" out of her apartment.

29. Only 37 minutes after Agosto was allegedly robbed, she was *not* able to *definitively* identify Perry as the person who robbed her.

30. More to the point, Agosto never provided a description of Perry as her assailant other than "he's about my height."

31. The ultimate question then, is, what identification gave the defendants probable cause to arrest Perry 17 minutes after Agosto failed to identify him as the robber and Robles complete refusal to cooperate with the identification procedure. There are no police reports documenting any investigatory steps taken that led up to identifying Perry as the person who robbed Agosto, other than the false report by Vega that "show-up conducted w/positive results" (***EXHIBIT B***), which is *completely contradicted* by the *Data Sheet* (***EXHIBIT C***) that was prepared by DANY.

32. In a deviation from normal police procedure, none of the individual defendant police officers documented the incident in a official police DD'5 report. Only the arresting officer, defendant Vega, filed a fabricated report.

33. The defendants, contrary to their training and to the official policy of the NYPD, *failed* to prepare any report that would reveal or draw attention to the failed identification by Agosto and Robles *refusal* to identify Perry.

34. Instead of drawing attention to the failed and refusal to identify, defendant Vega fabricated a positive identification report to show probable cause to arrest.

35. Under NYPD procedure, a witness is asked to sign his or her name next to a photograph to indicate a positive identification. Defendant Vega did not have Agosto sign any photograph or document indicating that a positive identification was made by her.

36. When the responding police asked for a description of the robber, it was Robles, not Agosto, who provided a vague description.

37. Vega testified before the Grand Jury. Even in his testimony he did not acknowledge that "a positive show-up was conducted." Vega testified that he showed Agosto a photo of Perry and stated nothing more**. EXHIBIT E:VEGA'S GRAND JURY TESTIMONY**. He did not testify that Agosto told him that "the person in the photo is the person who robbed her". Vega did not testify at all as to what gave him probable cause to arrest Perry.

*CAUSE OF ACTION*

***38.*** Defendants **STEVEN VEGA, MYLES LEONARD, SAJIT TOMY, and THOMAS MCCUE**, subjected Plaintiff **KAHREEM PERRY**, to false arrest in violation of 42 U.S.C. 1983 and the ***Fourth Amendment*** because they (i) intentionally confined Perry through arrest; (ii) Perry was aware of and did not consent to the confinement; (iii) the confinement was undertaken without probable cause or privilege, (iv) and Perry was harmed by the confinement.

***39.*** Defendant's **STEVEN VEGA, MYLES LEONARD, SAJIT TOMY, and THOMAS MCCUE**, subjected Plaintiff **KAHREEM PERRY**, to false imprisonment in violation of 42 U.S.C 1983 and the ***Fourth Amendment***, because they (i) intentionally confined Perry through ordering him to remain where he stood without explanation after the Complainant Victim Ivette Agosto failed to identify him as the person who robbed her, and after the Complainant Victim David Robles refused to identify Perry as the person who robbed his mother in their home at gunpoint, for an indeterminate duration; (ii) Perry was aware of and did not consent to the confinement; (iii) the confinement was undertaken without probable cause or privilege; (iv) Perry was harmed by the confinement.

***40.*** Defendant **POLICE SERGEANT KIRK BIRMELIN**, subjected Plaintiff **KAHREEM PERRY**, to both false imprisonment and false arrest where, as the supervisor of the other defendant officers violating Perry's

Constitutional rights, stood by and failed to intervene and stop the violations.

### *INJURIES*

41. As a result of each defendants' actions, and by the foregoing reasons, Plaintiff **KAHREEM PERRY**, suffered extreme and agonizing mental and emotional stress. Perry was forced to live in fear among violent gang members, drug addicts, sex perverts, and the lowest form of society's waste. Perry has been deprived of his freedom, having his life interrupted, and the opportunity to continue to engage in normal pursuit as a free member of society

42. In December of 2021, Perry informed correction officials in the MOD 4 Lower Housing Area, that he felt sick. Days later he was tested positive for having the COVID virus.

43. In January of 2022, Perry was jumped and beaten by inmates in the MOD 4 Lower Housing Area.

### *RELIEF SOUGHT*

44. Plaintiff **KAHREEM PERRY**, seeks *compensatory damages* in the amount of ten million dollars ($10,000,000), jointly and severally against the defendants for the mental and physical pain and suffering caused by the

Defendants' violation of Perry's **Fourth Amendment** right to be free from unlawful imprisonment and false arrest.

45. Plaintiff **KAHREEM PERRY**, seeks five million dollars ($5,000,000) from each defendant as a result of their violations of the Constitutional violations described in this complaint.

And for any other relief this Court deem just and proper.

Dated: December 28, 2022

Kahreem Perry, pro se

*LEGAL ARGUEMENT*

**DEFENDANTS' FALSE ARREST AND FALSE
IMPRISONMENT VIOLATED PLAINTIFF'S
FOURTH AMENDMENT RIGHTS**

The United States Court of Appeals for the Second Circuit generally looks to the
law of the State when a plaintiff claims the Constitutional Tort of false arrest. ***Jenkins v
City of New York,*** 478 F3d 76 (2d Cir. 2007). A Section 1983 claim for false arrest is
substantially the same as the claim for false arrest under New York law. ***Weyant v. Okst,***
101 F3d 845 (2d Cir. 1996). In a false arrest action, New York law places the burden of
proving an unlawful arrest on the plaintiff. ***Broughton v. State,*** 37 N.Y.2d 451 456-57
(1975) (plaintiff will prevail on a claim of false arrest under New York law if he can
show that the arrest was not privileged, i.e. , not based on probable cause). Likewise, the
elements to be proven for false imprisonment are the same as for false arrest. ***Singer v.
Fulton County Sheriff,*** 63 F3d 110,118 (2d Cir. 1995).

Law enforcement officials have probable cause to arrest if they receive credible
information from putative victims or eyewitnesses. ***Singer,*** at 119 ( "An arresting officer
advised of a crime by a person who claims to be the victim...has probable cause to effect

an arrest *absent circumstances that raise doubts as to the victim's veracity*") [emphasis added]. This means, a positive photo identification is normally sufficient to establish probable cause to arrest. ***Bail v Ramirez,*** 2007 U.S. Dist. LEXIS 25232, but, "an identification that is tentative and uncertain may, ***on its own***, be insufficient " to give rise to probable cause to arrest. ***Williams v. City of New York,*** 2012 U.S. Dist. LEXIS 19207 (E.D.N.Y. Feb 15, 2012) [emphasis added]; ***Thagard v Lauber***, 317 F.Supp. 3d 669 (W.D.N.Y.) ("comparative ID" not sufficient to establish probable cause).Here, Agosto "did not positively identify [Perry as the robber] at all". ***Williams,*** at 13. She "could only say that [Perry] ***looks like***" the robber, ***Williams***, at 13, but that "he changed his clothes." This cannot be construed as an identification. ***Dufort v. City of New York***, 874 F3d 338, 348 (2d Cir. 2017).

### CONCLUSION

Based on Agosto's failure to identify Perry exactly 37 minutes after the alleged robbery and Robles adamant refusal to identify, there was absolutely no probable cause to arrest.

Date: ~~September 12~~ December 28, 2022

Kahreem Perry, pro se

**EXHIBIT A: PERRY'S ARREST PHOTO**

MUGSHOT PROFILE



# NY/NJ HIDTA
## MUGSHOT PROFILE

| | |
|---|---|
| NAME: | **PERRY, KAHREEM** |
| AKA: | |
| SSN: | **0** |
| SID#: | **06057744J** |
| FBI#: | |
| USMS#: | |

Photo Ref #:    **29000041**



| | |
|---|---|
| DOB: | **04-03-1972** |
| SEX: | **MALE** |
| RACE: | **BLACK** |
| HEIGHT: | **505** |
| WEIGHT: | **140** |
| HAIR COLOR: | **BLACK** |
| HAIR LENGTH: | **SHORT** |
| EYE COLOR: | **BROWN** |
| SMT: | |



| | |
|---|---|
| ADDRESS: | **340 WILLIAMS AVENUE** |
| | **BROOKLYN, NEW YORK** |
| | **11207** |
| PHONE: | |
| ARREST#: | **M2021633931** |
| ARREST DATE: | **10-23-2021** |
| AGENCY: | **NYPD** |
| CHARGE CODE: | **PL 1601504** |
| CHARGE DESC: | **ROBBERY** |

HIDTA          CONFIDENTIAL FOR LAW ENFORCEMENT USE ONLY          10/26/'21

**EXHIBIT B: FELONY COMPLAINT**

Page 1 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

        -against-

Kahreem Perry (M 49),

                              Defendant.

FELONY

ADA Bradley Barbour
2123354114

Police Officer Steven Vega, Shield #18394 of the Housing Bureau PSA 4, states as follows:

*The defendant is charged with:*

    1   PL 140.30(4)        Burglary in the First Degree
                             (defendant #1: 1 count)
    2   PL 160.15(4)        Robbery in the First Degree
                             (defendant #1: 1 count)
    3   PL 160.05           Robbery in the Third Degree
                             (defendant #1: 1 count)

On or about October 23, 2021 at about 03:23 AM, inside 388 Pearl Street Apt 4G; in the County and State of New York, the defendant knowingly entered and remained unlawfully in a dwelling with intent to commit a crime therein and in effecting entry and while inside and in the immediate flight therefrom he or another participant in the crime displayed what appeared to be a firearm; the defendant forcibly stole property and in the course of the commission of the crime and immediate flight therefrom the defendant or another participant in the crime displayed what appeared to be a firearm; the defendant forcibly stole property;

*The factual basis for these charges are as follows:*

I am informed by a person known to the District Attorney's Office (hereinafter "INFORMANT 1") that they observed the defendant point what looked like a black firearm in the direction of INFORMANT 1 and another person known to the District Attorney's Office (hereinafter "INFORMANT 2") in the apartment that INFORMANT 1 and INFORMANT 2 live in, and that INFORMANT 2 gave the defendant $20 dollars.

I am informed by the defendant that he fought with INFORMANT 2 outside of the above-mentioned apartment at approximately the above-mentioned date and time.



CR-025139-21NY

Page 2 of 2

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

Kahreem Perry (M 49),

Defendant.

FELONY

ADA Bradley Barbour
2123354114

False statements made in this written instrument are punishable as a class A
misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

Police Officer Steven Vega     Date 10/23/21     Time 2124

**EXHIBIT C: VEGA'S HANDWRITTEN REPORT**

**COMPLAINT REPORT WORKSHEET**
PD 313-152A (Rev 02-18)

☐ Complaint Report
☐ Juvenile Report

**Cmd./PCT. Taking Report:** 804

**Jurisdiction Of Complaint:**
☐ NYPD Transit Bureau
☒ NYPD Housing Bureau
☐ Port Authority Police
☐ Triborough Bridge And Tunnel Police
☐ N.Y. State Park Police

☐ NYPD (Unless One Of The Following):
☐ Amtrak Police
☐ Conrail Police
☐ Staten Island Rapid Transit Police
☐ N.Y. State Police
☐ Long Island Railroad M.T.A.

☐ U.S. Park Police
☐ Health & Hospitals Corp. Police
☐ Metro North M.T.A.
☐ Other

**Did This Offense Occur on NYC** ☐ Yes ☐ No  **Command**
**Parks Department Property?** ☒ No   **NYC Parks Department Property Name**

**Location Of Occurrence:**
☐ Inside
☐ In Front Of
☐ Rear Of
☐ Opposite Of

**Address:** 368 Pearl St   **County:** Manhattan   **Zip Code:** 10038   **Apt/Room #:** 96

**Cross Streets:**

**Military Time And Date Of This Report:** Time 0900 Date 10/23/11
**Occurrence On Or From:** Time 0925 Date 10/23/11 Day Of Week
**Occurrence Through:** Time 0374 Date 10/23/11 Day Of Week

**Pct. Of Occ.:** 005   **Complaint #:** 3681   **O.C.C.B. #:**   **Aided #:**   **Accident #:**
**Case Status:** ☐ Open ☒ Closed   **Unit Referred To:** Pct Det   **Log/Case #:**   **File #:**

**Report Classification (If Offense, List Most Serious First):** Rob
☐ Attempted   ☒ Completed
☐ Stop, Quest., Frisk Rep. #

**Was The Victim's Personal Information Taken Or Possessed?** ☐ Yes ☒ No
**Was The Victim's Personal Information Used To Commit A Crime?** ☐ Yes ☒ No

**Comp. Reqd:** ☒ Radio ☐ Walk-In ☐ Phone ☐ Written ☐ Pick-Up
**Visible By Patrol:** ☐ Yes ☒ No
**Pct. Sector Of Occ.:**   **Seat Of Occ.:**   **Post Of Occ.:**   **Prints Required:** ☐ Yes ☒ No

**Possibly Gang Related:** ☐ Yes ☒ No   **If Yes, OCCB FOD Log #:**   **Name Of Gang:**

**If Arson:** ☐ Building ☐ Motor Vehicle ☐ Other Property   **Occupied** ☐ Occupied ☐ Unoccupied
**Damage Caused By:** ☐ Explosion ☐ Fire ☐ Unk
**Child Abuse Suspected:** ☐ Yes ☐ No

**Domestic Incident Report Required Because Incident Involved Persons Belonging To The NYS Family Court Act Or NYPD Expanded Definition Of A Domestic Relationship?** ☐ Yes ☒ No
**Child In Common?** ☐ Yes ☐ No   **Intimate Relationship?** ☐ Yes ☐ No

**Premises Type (Must Choose One):**
☐ Residence – Private House
☐ Residence – Apt. Building
☒ Residence – Public Housing

**House Of Worship:**
☐ Church
☐ Synagogue
☐ Mosque
☐ Other

**School:**
☐ Public (NYC Dept Of Ed)
☐ Private/Parochial
☐ College/University
☐ Other

**Public Transportation:**
☐ Airport Terminal
☐ Bus (NYC Transit)
☐ Bus (Other)
☐ Bus Stop
☐ Bus Terminal
☐ Ferry/Ferry Terminal
☐ Taxi (Yellow Licensed)
☐ Taxi (Livery Licensed)
☐ Taxi/Livery (Unlicensed)
☐ Tramway
☐ Transit – NYC Subway
☐ Transit Facility (Other)

**Commercial:**
☐ ATM
☐ Bank
☐ Bar/Night Club
☐ Beauty & Nail Salon
☐ Book/Card Store
☐ Candy Store
☐ Chain Store
☐ Check Cashing Business
☐ Clothing/Boutique
☐ Commercial Building
☐ Department Store
☐ Doctor/Dentist

☐ Drug Store
☐ Dry Cleaner/Laundry
☐ Factory/Warehouse
☐ Fast Food
☐ Gas Station
☐ Grocery/Bodega

☐ Gym/Fitness Facility
☐ Hospital
☐ Hotel/Motel
☐ Jewelry Store
☐ Liquor Store
☐ Loan Company

☐ Mobile Food Cart/Stand
☐ Photo/Copy Store
☐ Real Estate Office
☐ Restaurant/Diner
☐ Shoe Store
☐ Small Merchant

☐ Social Club/Policy Location
☐ Storage Facility
☐ Store Unclassified
☐ Supermarket
☐ Telecomm. Store
☐ Variety Store
☐ Video Store

**Indicate Name Of Business:**

**Other:**
☐ Abandoned Building
☐ Bridge
☐ Cemetery
☐ Construction Site
☐ Highway/Parkway
☐ Marina/Pier
☐ Open Lot/Area
☐ Park/Playground
☐ Parking Lot/Garage
☐ Private
☐ Public
☐ Street
☐ Tunnel
☐ Public Building
☐ Mailbox Inside
☐ Mailbox Outside
☐ Other

**Indicate Name If Known:**

**Exact Location Within Premises Type, If Known (Choose One):**
☒ Apartment
☐ Basement
☐ Commercial Establishment
☐ Community Center
☐ Driveway
☐ Elevator
☐ Elevator Equipment Room
☐ Freight Elevator
☐ Garage
☐ Hallway
☐ Laundry Room
☐ Lobby/Door/Vestibule
☐ Maintenance/Storage Area
☐ Management Offices/Other Offices
☐ Parking Lot
☐ Play/Park Area
☐ Public Sidewalk
☐ Reef Room
☐ Roof
☐ Roof Top Landing
☐ Stairway
☐ Terrace
☐ Walkways
☐ Motor Vehicle:
☐ Car
☐ Motorcycle
☐ Truck
☐ Other

**If Burglary: Forcible Entry?** ☐ Yes ☐ No
**If Burglary, Describe:** ☐ Vehicle ☐ Bldg. Residential ☐ Bldg. Commercial ☐ Garage
☐ Truck ☐ Trailer ☐ Watercraft
**Location of Entry:** ☐ Front ☐ Rear ☐ Side ☐ Roof ☐ Unknown ☐ Other
**Crime Prev. Survey Requested:** ☐ Yes ☐ No

**Point of Entry:** ☐ Window ☐ Door ☐ Wall ☐ Floor ☐ Vent/Duct ☐ Other
**Alarm Bypassed** ☐ Yes ☐ No ☐ N/A
**Alarm Company Responded:** ☐ Yes ☐ No ☐ N/A
**Alarm Company Name and Telephone #**
**Complainant/Reporter Present During Burglary** ☐ Yes ☐ No

**Supervisor On Scene:** ☒ Yes ☐ No   **Rank:** Sgt **Name (Print):** Bienmelin **Cmd.** PSA 1
**Canvass Conducted:** ☒ Yes ☐ No (Indicate Interviews And Results)
**Was Translator Used:** ☐ Yes ☐ No If Yes, Indicate Name, Address, Phone # and Language
**Name:** _____ **Phone #:** _____

**If Robbery: Perpetrator Present:** ☐ Yes ☐ No   **Amber Street Light Activated:** ☐ Yes ☐ No
**Method of Conveyance:** ☐ Street Hail ☐ Dispatch

**Location of Pick-up:**

CN states that at 700 she was returning to her apt from throwing out the trash. Deft did follow her into apt displaying a small black pistol and demanded money. CN gave deft $20 dollars us currency, cn[?] and gave a description of a 40 yr old male black [?] build wearing all black w/red bandana around his neck. Interior canvass[?] by 4D PO Lisandro Potamy w/positive results. Deft Matched a partial description about age 40 yr 5'5" skinny build black shorts and red face mask, stopped by[?] 4D on the 15 flr. Show up conducted w/positive results. No firearm recovered[?]. Search incident to inventory, PO Lisandro recovered approx 1/8 ounce of alleged cocaine from deft front left pocket. CN further stated that deft took his cell phone. Cn apt vouchered as arrest evidence.

C/v states that at t/p/o she was returning to her apt from throwing out trash. Deft did follow her into apt displaying a black pistol and demanded money. C/v 2 gave deft $20 dollars. C/v 1 and 2 gave a description of 40 year old male black 5'5" skinny build wearing all black w/ red bandana around his neck. Interview conducted by 41) w/ positive results. Deft matched partial description stopped by 4D on 15 floor. Show up conducted w/positive results. No firearm recovered.

S/I inventory, PO Lennard recovered approx ½ ounce of alleged crack cocaine from deft front left pocket. C/v further states deft left his cellphone in apt vouchered as arrest evidence

**EXHIBIT D: DATA SHEET**

Screened on 10/23/2021 by Barbour, Bradley, Trial Bureau 60, flagged to Barbour, Bradley, Trial Bu

Page 1

## DATASHEET

**Kahreem Perry** (M 49 )
Arrested: Saturday, 10/23/2021 4:27:00 AM
**Bail**
Cash-$500,000;Insurance Company Bond-$1,500,000;Bond-Surety-Partially Secured-$1,500,000; See Supp

| Req | Set |
|-----|-----|

**Rob 1: D robs people at gunpoint in their apartment**
Agosto states that she was returning to apartment after throwing out trash, D follows her and displays a small bla
pistol, asks for money. Inside apartment, son hears demand for money and firearm, son gives $20 and he leaves
- Witnesses back into kitchen, D backs out of apartment and leaves

1/2 oz of cocaine
Description: 5'5" 40ish skinny black man, all black with red bandana around neck
- Red shirt and red face mask around neck, black pants when arrested- matched as height/age/race
- Show up with Agosto, showed photo of D in hallway, said "that looks like him but he changed his clothes."
- Son refused to come up to ID.
- 15th Floor D is found, 4D (Leonard and Tomy) on vertical, saw male matching above description- appx: 3:50 AM
came from 15I.
- Woman, I live apartment to Tomy- Tomy ran apartment and found her name and photo, lives there.
I know him and I know her. I didn't take anything from them. I know where they live, they have the big camera on the door. I've had a disput
with him, he's a drug dealer. I went there because of the dispute- Inside of PSA 4 to PO Vega 10/23 7:05 AM

**Statements**
RESERVED

**Identifications**
RESERVED

**Defense Counsel**
■ Arraignment Only
■ 18B ■ LAS ■ DEF ■ NDS ■ Private

**Arraignment**
Date:                Part:
ADA:                      Judge:                    Reporter:
**Adjournment**
Date:                Part:
Reason:
**Special Instructions**

**Notes:**

| | | |
|---|---|---|
| 170.10(8-a)(a) | | |
| 170.20 - Misdemeanor GJ | | |
| 370.15 | | |
| 710.30(1)(a) - Statement | | |
| 710.30(1)(a) - Statement Reserved | | ■ |
| 710.30(1)(b) - ID | | |
| 710.30(1)(b) - ID Reserved | | ■ |
| Alibi Notice | | |
| DMV Abstract | | |
| DWI Paperwork | | |
| Felony Grand Jury | | ■ |
| Field Test | | |
| Order To Produce | | |
| Request OTP Date Before 180.80 | | |
| Request OTP Date On 180.80 | | |
| Request TOP | | ■ |
| Stolen Property - 15 day | | |
| Stolen Property - 48 hours | | |
| Submit Family Registry | | |
| Supporting Deposition | | |
| Surety Order | | |
| Trespass Notice | | |
| Waiver of Discovery Notice | | |
| Wiggins Letter | | |



**EXHIBIT E: VEGA'S GRAND JURY TESTIMONY**

Vega

```
 1            A.     To the 15th floor.

 2            Q.     Okay.  And where is Ms. Agosto's

 3     apartment?

 4            A.     Ms. Agosto's apartment is on

 5     the 4th floor.

 6            Q.     Okay.  And just a note.  Is there

 7     anything on the door of Ms. Agosto's apartment

 8     that you observed?

 9            A.     Yes.  There is a peephole camera on

10     her apartment door, which is apartment 4,

11     George.

12            Q.     Okay.  So what if anything did you

13     do after you brought Ms. Agosto up to the 15th

14     floor?

15            A.     I then proceeded to have her do the

16     showup so that way she can identify him, since

17     we had him in custody on the 15th floor.  She

18     appeared to be afraid, so I showed her a photo

19     that I took of the suspect on the 15th floor,

20     to show her.

21            Q.     And did Ms. Agosto have the

22     opportunity to see the photo of the defendant?

23            A.     Yes.

24            Q.     Okay.  And when did you take that

25     photo?
```

Vega

1          A.     I took it when I arrived to

2     the 15th floor to do the showup.

3          Q.     I'm showing you what's been marked

4     for identification as Grand Jury Exhibit 1.  Do

5     you recognize this?

6          A.     Yes.

7          Q.     What is this?

8          A.     This is the photo I took on

9     the 15th floor.

10         Q.     Okay.

11         A.     Of the suspect.

12         Q.     And is this a fair and accurate

13    representation of how Kahreem Perry appeared

14    when he was arrested by you?

15         A.     Yes.

16              (ELMO TURNED ON)

17              MR. BARBOUR:  At this time People

18              move what's been marked for

19              identification as Grand Jury Exhibit 1

20              into evidence as Grand Jury Exhibit 1.

21              (ELMO TURNED OFF)

22         Q.     Officer, did there come a time that

23    you had the opportunity to speak to Mr. Perry

24    about this incident?

25         A.     Yes.  At 100 Centre Street, after

RECEIVED
SDNY PRO SE OFFICE

Kahreem Perry
349-21-03196
AMKc, 18-18 Hazen St.
E. Elmhurst, N.Y. 11370

Dec. 28, 2022

Pro Se Intake Unit
United States Dist. Court
Southern District Court
500 Pearl Street, Rm 200
New York, New York 10007

Re: Perry v. Vega, et al
22-cv-05813

DECLARATION OF SERVICE

I, Kahreem Perry, the Plaintiff in the above-reference action, declare under penalty of perjury, that I forwarded a copy of the enclosed Amended complaint to Corporation Counsel Jesse Zilinski of the Law Dept, located at 100 church Street, New York, N.Y 10007

Truely Yours
Kahreem Perry

Kahream Perry
349-21-03196
AMKC, 18-18 Hazen St
East Elmhurst, N.Y. 11370



Pro Se Unit
United States Dist. Court
Southern District, N.Y.
500 Pearl Street, Rm
New York, New York 10007

USM
SDNY

RECEIVED
SDNY PRO SE OFFICE
2023 JAN -6 PM 2:11