USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 1/2/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

KAHREEM S. PERRY,

                                    **Plaintiff,**                      **22-CV-05813 (JHR)(SN)**

                    -against-                                           **REPORT &**
                                                                        **RECOMMENDATION**
STEVEN VEGA, et al.,

                                    **Defendants.**

------------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

**TO THE HONORABLE JENNIFER H. REARDEN:**

 *Pro se* plaintiff Kareem Perry asserts claims of false arrest, malicious prosecution, failure

to intervene, and violation of due process arising out of an allegedly unlawful arrest for robbery

that took place in October 2021. ECF No. 76, Third Am. Compl., ¶¶ 1-20. He sues NYPD

Officers Steven Vega, Myles Leonard, Sajit Tomy, Thomas McCue, Kirk Birmelin, Christian

Molina (collectively, "City Defendants"), and civilian David Robles. The City Defendants move

to dismiss the Third Amended Complaint for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6).

 I recommend GRANTING the City Defendants' motion to dismiss in full.

**BACKGROUND**

**I. Arrest and Grand Jury Proceedings**

 The following facts are drawn from the Third Amended Complaint, which are assumed to

be true for the purposes of this motion. The Court also considers body-worn camera footage from

Officers Vega and Leonard recorded during Plaintiff's arrest. Plaintiff cites this footage in the

Third Amended Complaint, provided a copy of the video to the Court, and requests that the Court consider it. See Third Am. Compl. ¶¶ 6, 8.

On October 23, 2021, Plaintiff got into an altercation with David Robles in the hallway outside Robles's apartment on the 4th floor of an apartment building. Third Am. Compl. ¶ 1. After the confrontation, Plaintiff went to his aunt's apartment on the 15th floor of the same building. Id. Shortly afterward, Robles told his mother, Yvette Agosto, to call the police and report that she had been robbed at gunpoint. Id. ¶ 2. The City Defendants responded to Agosto's 911 call. Id. ¶ 3. When officers arrived, Robles and Agosto reported that a man wearing all black pushed Agosto into her apartment as she returned from taking out the trash and demanded money. Id. ¶ 4. Officer Vega asked whether the door camera contained a photo of the perpetrator, but Robles said that it does not record. Body Worn Camera Footage from Vega ("Vega BWC") at 03:41:50-55. When asked to describe the suspect, Robles said he was a thin Black male wearing all black and a red bandana around his neck. Id. at 03:42:05-14. When the officers asked about the suspect's height, Robles pointed to Agosto and said, "about her height," to which the officers responded, "so about five-five." Id. at 03:42:15-23. Officer Leonard asked Robles and Agosto whether they could provide more detail about the suspect's skin tone or facial hair. Agosto did not answer, and Robles said the incident happened too quickly for him to notice. Body Worn Camera Footage from Leonard ("Leonard BWC") at 03:46:14-25.

Officers Leonard and Tomy then searched the building, located Plaintiff on the 15th floor, and detained him. Third Am. Compl. ¶ 7. Leonard told Plaintiff he matched the description of the suspect and would remain detained until officers could confirm or rule out his identification. Id. Vega and Bermelin then escorted Agosto to the 15th floor to ascertain whether Plaintiff was the perpetrator. Id. ¶ 9. While in the elevator, Bermelin asked Agosto if she got a

2

"good look at" the perpetrator's face. Id. Agosto said she did not because the incident happened too quickly. Id. When Officers Vega and Agosto arrived on the 15th floor, Vega took a photo of Plaintiff and showed it to Agosto, asking, "Is that him?" Id. ¶ 10. Agosto looked at the photo and replied, "It looks like him, but he changed his clothes." Id. Vega then brought Agosto back to her apartment to show the same photo to Robles. Robles refused to cooperate, repeatedly saying, "I'm not sure," when asked if the person in the photo was the perpetrator. Id. ¶¶ 11-12. Robles stated "I'm not getting involved with no court stuff. I'm not being a snitch or whatever." Id. ¶ 12.

Vega showed the photo to Agosto again, asking her whether it depicted the man who had robbed her. Agosto responded, "It kinda looks like him." Id. ¶ 14. Vega then showed the photo to Agosto a third time; this time, she said, "It looks like him, but different clothing." Vega BWC at 4:14:31-36. Vega asked, "Would you be willing to press charges?" Id. at 4:14:36-39. Agosto replied, "I don't know, I'm afraid that he might-." Id. at 4:14:42-46. Vega then interjected, saying, "It's more a matter of whether you think this is the guy who did it… is this him, yes or no?" Id. at 04:15:07-10. Agosto responded, "Yes." Id. at 04:15:10-13. Vega asked if Agosto is willing to testify to that in a court of law to which she responded, "Yes." Id. Vega then confirmed to Bermelin that Agosto made a positive identification, and Bermelin signaled to Leonard to arrest Plaintiff. Bermelin handcuffed Plaintiff and told him he was under arrest. After handcuffing Plaintiff, Lenard searched his pockets and discovered cocaine, marijuana, and cash. Leonard BWC at 4:16:08-14.

Plaintiff was later interviewed by Assistant District Attorney ("ADA") Bradley Barbour, which was video recorded. Third Am. Compl. ¶ 20. During the interrogation, Plaintiff admitted to having an altercation with Robles outside of the apartment and taking cocaine and marijuana from his hand. Id. Plaintiff also told ADA Barbour that Agosto was not present during the

3

altercation, and that Robles had a door camera on his apartment door, which would show what actually happened. Id. ADA Barbour responded that the camera was reportedly not working but said he would look for footage. Id. ADA Barbour did not obtain a warrant or make efforts to secure the footage. Id.

Meanwhile, Vega filed a felony complaint, charging Plaintiff with first-degree robbery and burglary and fourth-degree possession of a controlled substance. Id. ¶ 20. The complaint stated that Agosto and Robles reported being robbed at gunpoint and falsely stated that Plaintiff took $20 from a table in the apartment, when Robles told Vega he had *given* Plaintiff the $20, which is reflected in Vega's memo book. Id. ¶ 22. The complaint also omitted Agosto's "equivocal identification" of Plaintiff and Robles's refusal to identify Plaintiff as the perpetrator. Id. ¶ 23.

ADA Barbour presented the case to a grand jury. During the grand jury proceedings, Agosto "falsely testified" that she immediately identified Plaintiff as the robber and that he took $20 from her living room table. Id. ¶ 24. Agosto did not testify that she made an "equivocal identification" before finally saying "it was him." Id. ¶ 26.

Vega also testified, stating that Agosto identified Plaintiff as the assailant but omitted that she had been initially equivocal with her identification and could state only that "it kinda looks like him." Id. ¶ 27. Vega did not testify that Agosto conclusively stated "it was him" only after being shown the photo a fourth time. Id. Vega did not testify that Robles refused to identify the Plaintiff or otherwise cooperate in the investigation. Id. ¶ 28. Vega further testified falsely that Plaintiff made several "admissions" to him, including that "there was no old woman in the apartment he robbed," and that "he did not realize he left his phone in the apartment," though his written report stated that Plaintiff dropped his phone in the hallway. Id. ¶ 30. The grand jury

4

indicted Plaintiff on charges of first-degree robbery and burglary and fourth-degree possession of a controlled substance. Plaintiff alleges that the grand jury's decision to indict was based on (1) Agosto's unequivocal identification of Plaintiff as the man who robbed her, and (2) Plaintiff's alleged "admissions" to Vega. Id. ¶ 34.

## II.    Trial

At trial, Agosto testified that she did not know how much money Plaintiff allegedly took and omitted any mention of her initial equivocal identification. Id. ¶ 41. When asked in court whether she saw the person who robbed her, Agosto replied, "No, I don't see him." Id. ¶ 42. During the lunch break, she remained on the stand and whispered to the judge that she believed Plaintiff was the robber. Id. ¶ 43. When the jury returned, she identified Plaintiff as the assailant, explaining that her earlier failure to do so was due to an eye problem. Id. ¶ 44. On cross-examination, Agosto testified that Vega had shown her the photo only twice and that she identified Plaintiff both times. Id. ¶ 45. Agosto also testified that the door camera did not continuously record but only captured still photos when someone was at the door. Id. ¶ 46. Robles testified that Plaintiff took "seventeen, eighteen, nineteen dollars" from a table in his apartment, though he told Vega on the day of the arrest that he gave Plaintiff $20. Id. ¶ 47. He also testified that the door camera did not record video and stated that he recognized the person in the photo shown by Vega, but the court did not allow an in-court identification. Vega testified that he showed Agosto the cell phone photo "about three times." Id. ¶ 53.

After roughly three hours of deliberation, the jury acquitted Plaintiff of the robbery and burglary charges but convicted him of possession of a controlled substance.

5

**DISCUSSION**

**I.    Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must allege sufficient facts . . . to state a plausible claim for relief." Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). In reviewing such a motion, courts "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

Ordinarily, in resolving a motion to dismiss, courts are limited to the four corners of the complaint. Bellin v. Zucker, 6 F.4th 463, 473 (2d Cir. 2021) (courts must "consider the complaint in its entirety"). One exception to this rule allows courts to consider "documents attached as exhibits or incorporated by reference in the pleadings." Hu v. City of New York, 927 F.3d 81, 88 (2d Cir. 2019). "Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." Stewart v. Riviana Foods Inc., No. 16-CV-6157 (NSR), 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis omitted) (collecting cases); see also Dunkelberger v. Dunkelberger, No. 14-CV-3877 (KMK), 2015 WL 5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents, and to be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." (alterations omitted) (quoting Bill Diodato Photography LLC v. Avon Prods., Inc., No. 12-CV-847 (RWS), 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

6

"When specific interactions give rise to claims, recordings thereof are often deemed integral to the complaint." Barkai v Mendez, 629 F. Supp. 3d 166, 176 (S.D.N.Y. 2022). "This is particularly true where the claims at issue are brought under § 1983." Id. (citing cases). Where a plaintiff relies heavily on the recording in drafting the complaint, courts treat the recording as incorporated into the complaint. See, e.g., Beach v. City of New York, No. 21-CV-6737 (ALC), 2024 WL 4349137, *3 (S.D.N.Y. Sept. 30, 2024) (incorporating body worn camera footage when assessing the claims in the motion to dismiss because the Plaintiff relied upon it when preparing the complaint).

Plaintiff's Third Amended Complaint expressly incorporates the body worn camera footage and repeatedly quotes from statements that can be heard on the video. There is no dispute as to the videos' authenticity or accuracy. Accordingly, the Court deems the body worn camera footage to be incorporated by reference or integral to the complaint and thus proper for the Court to consider in deciding the motion to dismiss.

Finally, the "submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up); see also Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011). The Court must, however, examine a *pro se* plaintiff's complaint "for factual allegations sufficient to meet the plausibility requirement." Hill, 657 F.3d at 122; see Twombly, 550 U.S. at 570 (a complaint must allege "enough facts to state a claim for relief that is plausible on its face"). Courts "are obligated to draw the most favorable inferences that [a *pro se*] complaint supports." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). The Court will not assume the truth of legal conclusions or conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

## II.    False Arrest Claim

Plaintiff brings claims for false arrest against the City Defendants, contending that they lacked probable cause to arrest him for robbery and burglary because Agosto's identification was unreliable. He does not challenge his subsequent arrest for drug possession, the only charge for which he was convicted.

Under 42 U.S.C. § 1983, a plaintiff bringing a claim for false arrest must allege the following: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). When an arrest is made without a warrant, as in this case, defendants must show probable cause for the arrest. Matthews v. City of New York, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person about to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause to arrest is based on the totality of the circumstances and is an objective rather than subjective inquiry as to the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." Celestin v. City of New York, 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008) (cleaned up). An officer is entitled to qualified immunity from a claim for false arrest if he can establish that he had "arguable probable cause to arrest the plaintiff." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2014). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Id.

Plaintiff argues that Agosto's identification was not reliable due to inconsistencies in her description and because the photo identification procedure employed by the City Defendants was suggestive. "[A]bsent circumstances that raise doubts as to the victim's veracity," a victim's identification is typically sufficient to provide probable cause. Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). In the context of a § 1983 false arrest claim, "the relevant inquiry for purposes of probable cause is whether the flaws in the [identification] procedures increased the risk of a misidentification to an extent that the resulting identification no longer supports the requisite probability that the suspect has perpetrated a crime." De Michelle v. City of New York, No. 09-CV-9334 (PGG), 2012 WL 4354763, at *11 (S.D.N.Y. Sept. 24, 2012).

First, Plaintiff argues that there were enough indications that Agosto and Robles were not trustworthy sources of information that the arresting officers could not reasonably rely on them. Primarily, he focuses on Agosto, who acknowledged that the robbery occurred too fast to "get a good look" at Plaintiff, her description of his physical traits was not detailed, and her responses to seeing his photo the first three times were "equivocal." The "totality of the circumstances" as alleged, however, supports a finding of probable cause.

The police were told that the perpetrator of the robbery was "a skinny black male, around 5'5" in his 40's," Third Am. Compl., ¶ 4, a description that is consistent with Plaintiff. Agosto positively identified Plaintiff four times, stating, "[i]t looks like him," "[i]t kinda' looks like him," "[i]t looks like him," and "[y]es, it's him." Id. at ¶¶, 10, 14, 15. While Plaintiff argues that the first three identifications were equivocal – which the Court accepts as true despite the context and the video suggesting otherwise – the Court of Appeals has rejected the notion that, "in order for a witness's identification of a perpetrator to provide probable cause, it must be made with complete certainty." Keith v. City of New York, 641 F. App'x 63, 66 (2d Cir. 2016) (non-

9

precedential summary order) (citing People v. Pelzer, 115 A.D.3d 573, 982 N.Y.S.2d 316 (1st

Dep't 2014), and People v. Rhodes, 111 A.D.2d 194, 488 N.Y.S.2d 821, 822 (2d Dep't 1985));

cf. Norwood v. Mason, 524 F. App'x 762, 765 (2d Cir. 2013) (non-precedential summary order)

("New York courts routinely hold that a victim's photo identification of a person provides the

police with probable cause to arrest that person, even where the identification may not be 100%

reliable.").

In any event, Plaintiff was arrested only after Agosto stated affirmatively that she would

be willing to testify in court that Plaintiff committed the robbery. Vega BWC at 04:15:10-13. Up

until that moment, Plaintiff was being detained pending further investigation based on the

reasonable suspicion to believe he committed the crime (a match of the physical description and,

as alleged, Agosto's equivocal identifications), a lower threshold that Plaintiff does not

challenge. Once Agosto provided an affirmative declaration identifying the perpetrator, the

officers had probable cause to effect the arrest.

Second, Plaintiff suggests that the single photo show-up was unduly suggestive. Show-

ups, by their nature—where a witness is shown a single photograph or suspect—are "inherently

suggestive because [they] involve[ ] the presentation of a single suspect to a witness by the

police." Sorrell v. County of Nassau, 162 F. Supp. 3d 156, 167 (E.D.N.Y. 2016) (quoting Brisco

v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009)). See also United States v. Concepcion, 983 F.2d 369,

377 (2d Cir. 1992) (recognizing that single photo show-ups can create a substantial risk of

misidentification). Even so, courts recognize that an on-scene identification may be necessary "to

quickly confirm the identity of a suspect, or to ensure the release of an innocent suspect." Brisco,

565 F.3d at 88. For that reason, even "suggestive identification procedures are permissible so

long as they are not unnecessarily so." Candelario v. City of New York, No. 12-CV-1206 (LAP), 2013 WL 1339102, at *4 (S.D.N.Y. April 3, 2013).

As alleged, Defendants presented Agosto with the photo of Plaintiff shortly after she reported the robbery and immediately after detaining Plaintiff inside the building where the incident occurred based on the witnesses' physical description of the perpetrator. The photo display therefore served the immediate practical purpose that on-scene identifications are meant to facilitate: to quickly determine whether the officers had apprehended the correct individual or whether Plaintiff should be released. Thus, even if suggestive, the overall context – including officers asking the witnesses questions in a non-combative and non-suggestive manner within an hour of when the incident occurred – did not increase the risk of misidentification to such an extent that probable cause was no longer supported.

Taken together, these allegations depict an identification that was sufficiently reliable to support the City Defendants' conclusion that probable cause existed. Agosto consistently identified Plaintiff as the perpetrator, and her statements and demeanor did not give a reasonable officer a reason to doubt her veracity. I therefore recommend that the Court grant the City Defendants' motion to dismiss Plaintiff's false arrest claim.

### III.    Fourteenth Amendment Claim Against Vega

Plaintiff alleges that Vega violated his Fourteenth Amendment rights by employing a suggestive identification procedure. A suggestive identification procedure "does not itself intrude upon a constitutionally protected interest." Wray v. City of New York, 490 F.3d 189, 193 (2d Cir. 2007) (quoting Manson v. Brathwaite, 432 U.S. 98, 113 n.13 (1977)). The constitutional inquiry instead focuses on whether the identification procedure ultimately rendered the trial

11

unfair. Id. Accordingly, Plaintiff cannot maintain a separate Fourteenth Amendment claim based solely on the suggestive identification leading to his arrest.

I recommend that the Court grant the City Defendants' motion to dismiss the Fourteenth Amendment claim against Vega.

## IV.    Claim for Unreasonably Prolonged Detention Against Vega

Plaintiff alleges that Vega's allegedly suggestive identification procedure, omissions and false testimony before the grand jury, and failure to investigate violated his Fourth Amendment right not to be deprived of liberty without due process of law. Specifically, Plaintiff contends that Vega made false statements and misleading omissions in his felony complaint, and that he both withheld information and gave false testimony during the grand jury proceedings that led to Plaintiff being detained.

Police officers violate the Fourth Amendment's protection against unreasonable seizures if they fail to act on readily available exculpatory evidence, thereby causing an individual's pretrial detention to continue without justification. Russo v. City of Bridgeport, 479 F.3d 196, 205 (2d Cir. 2007). To prevail on such a claim, Plaintiff must establish "(1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'" Id. at 205. In Russo, the Court of Appeals considered three factors in determining whether the plaintiff's detention violated the Fourth Amendment: (1) the length of time of the plaintiff's wrongful incarceration; (2) the ease with which the exculpatory evidence in the officers' possession could have been checked; and (3) the alleged intentionality of the defendants' behavior. Id. at 209.

To the extent Plaintiff's prolonged detention claim rests on Vega's initial identification procedure with Agosto, that allegation is more appropriately analyzed as part of the false arrest claim. Plaintiff's challenge to the identification procedure does not concern the mishandling or suppression of exculpatory evidence, but rather the reliability of the identification itself. Plaintiff's remaining allegations pertain to Vega's statements made in a felony complaint, his grand jury testimony, and his failure to investigate the door camera footage.

Taking Plaintiff's allegations as true, Vega's conduct does not rise to the level of conscience-shocking behavior contemplated by the Court of Appeals in Russo. Plaintiff points to several alleged falsehoods and omissions in Vega's felony complaint and grand jury testimony, including statements that (1) Agosto described Plaintiff as a 5'5 Black male in his forties; (2) Agosto reported that Plaintiff took $20 from a table, when Vega's own memo book and body-worn camera footage show that Robles stated he gave the suspect the $20; and (3) Robles said Plaintiff entered his apartment with a gun. Plaintiff further contends that (1) Vega omitted that Agosto initially was equivocal when shown a single photo of Plaintiff, (2) that Robles refused to identify Plaintiff, and (3) that neither witness could describe the perpetrator's facial features. Vega also allegedly mischaracterized statements made to ADA Barbour, attributing them falsely to Plaintiff himself. These alleged misrepresentations do not constitute the type of "affirmative, conscience-shocking misconduct" necessary to sustain a prolonged-detention claim.

The alleged falsehoods and omissions concern narrative framing, not the suppression of "specific, readily verifiable claims of innocence"—such as the video recording in Russo, which conclusively demonstrated the plaintiff's innocence and was knowingly concealed for months. See Russo, 479 F.3d at 209; see also Husbands ex rel. Forde v. City of New York, 335 F. App'x 124, 129 (2d Cir. Jun. 30, 2009) (non-precedential summary order) ("[T]he facts of *Russo* are

dissimilar to the facts present here. In contrast with *Russo*, there was no *definitive evidence in the authorities' possession that could have proven that Forde was not the shooter."*) (emphasis in original). These alleged misrepresentations concern characterization and emphasis of certain facts rather than the concealment of concrete, exonerating evidence. They do not reflect the deliberate suppression of proof that would have established Plaintiff's innocence. Likewise, Vega's alleged failure to disclose that Agosto was shown a single photograph three times, or that neither witness could describe the assailant's physical features, goes to the credibility and reliability of the witnesses, not to the existence of readily verifiable, dispositive proof of innocence. Cf. Nzegwu v. Friedman, No. 10-CV-02994 (CBA)(RML), 2014 WL 1311428, at *13 (E.D.N.Y. 2014) ("where evidence ignored is only arguably exculpatory, the conduct does not shock the conscience").

Finally, Vega's failure to investigate the door camera footage, to the extent it existed, was not conscience shocking. Unlike in Russo, where the arresting officers lied to the plaintiff by falsely stating that they had reviewed surveillance footage that implicated him when, in reality, the footage was exculpatory, the Third Amended Complaint fails to allege the existence of any footage at all that Vega otherwise viewed and refused to disclose. Russo, 479 F.3d at 211. In fact, the Third Amended Complaint alleges that Vega inquired about the door camera footage and was informed by Agosto that the device did not record, and Vega stated he would send pictures of the camera to Plaintiff's lawyer if asked for it. See Third Am. Compl. ¶ 37. Vega's decision to not pursue additional investigation into speculative footage does not constitute conscience-shocking conduct for purposes of a Russo claim.

I recommend that the Court grant the City Defendants' motion to dismiss the Fourth Amendment prolonged detention claim against Vega.

## V.      Failure to Intervene Claim Against Molina

Plaintiff asserts that Molina failed to intervene during Vega's deficient identification procedure with Agosto. A police officer may be liable for failure to intervene under § 1983 where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008). As already discussed, a suggestive identification procedure "does not itself intrude upon a constitutionally protected interest." Wray, 490 F.3d at 193. Because the allegedly suggestive identification procedure, standing alone, does not amount to a constitutional violation, Molina's presence during Vega's questioning of Agosto did not create a realistic opportunity to prevent any constitutional harm.

Accordingly, I recommend that the Court grant the City Defendants' motion to dismiss the failure to intervene claim against Molina.

## VI.     Malicious Prosecution Claim Against Vega

Plaintiff asserts a malicious prosecution claim against Vega, alleging that Vega obtained the grand jury indictment through fraud and material misrepresentations, and that he provided false testimony to the grand jury. To prevail on a claim for malicious prosecution, a plaintiff must show a seizure violating his Fourth Amendment rights and establish the elements of a malicious prosecution claim under state law. Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010). To establish a claim for malicious prosecution under New York law, a plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." Murphy v. Lynn,

118 F.3d 938, 947 (2d Cir. 1997) (quoting Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1996)). The existence of probable cause is a complete defense to a claim of malicious prosecution and an indictment by a grand jury creates a presumption of probable cause. Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). But that presumption can be rebutted by evidence that the indictment was procured by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Bertuglia v. City of New York, 133 F. Supp. 3d 608, 626 (S.D.N.Y. 2015) (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)).

To the extent Plaintiff's malicious prosecution claim is based on arguments that Vega's testimony to the grand jury was fraudulent, the claim is barred by absolute immunity. Plaintiffs cannot use an officer's allegedly false grand jury testimony to rebut the presumption of probable cause arising from an indictment. See Coggins v. Buonara, 776 F.3d 108, 112 (2d Cir. 2015). But this does not foreclose a malicious prosecution claim based on "allegations of bad faith conduct outside the grand jury." Nickey v. City of N.Y., No. 11-CV-3207 (RRM)(RLM), 2013 WL 5447510, at *7 (E.D.N.Y. Sept. 27, 2013). The Third Amended Complaint includes several such allegations that do not rely on Vega's grand jury testimony. Plaintiff alleges that Vega filed a felony complaint containing false statements and material omissions, including that Agosto described Plaintiff as a 5'5" Black male in his forties and that Plaintiff *took* $20 from a table, when in fact Agosto only described Plaintiff as "my height," and Robles had stated that he *gave* the suspect $20. Plaintiff also alleges that the statement made in Vega's felony complaint that Agosto "told me, in substance, that that was the person who robbed her apartment" omitted her initial hesitation in identifying Plaintiff as the assailant.

Even accepting these allegations as true, they do not demonstrate a lack of probable cause for robbery sufficient to state a claim for malicious prosecution. The Third Amended Complaint

16

incorporates a video of Plaintiff's interview with ADA Barbour, during which Plaintiff admits that he confronted Robles outside of the apartment on the 4th floor, engaged in a physical altercation, and possessed a BB gun during the incident, though he claimed he did not brandish it. These admissions confirm that Plaintiff confronted Robles on the 4th floor and possessed a weapon during the incident, which aligns with the conduct described in Vega's felony complaint. The omissions and inconsistent statements Plaintiff highlights do not rebut the presumption of probable cause stemming from the grand jury indictment.

I recommend that the Court grant the City Defendants' motion to dismiss the malicious prosecution claim against Vega.

## VII.    Fair Trial Claim Against Vega

Finally, Plaintiff asserts that Vega violated his right to a fair trial, arguing that Vega falsified information in the "felony complaint" provided to ADA Barbour. A § 1983 fair trial claim requires a plaintiff to establish that "(1) the officer created false information, (2) the officer forwarded the false information to prosecutors, (3) the false information was likely to influence the jury's decision, and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions." Kee v. City of New York, 12 F.4th 150, 168 (2d Cir. 2021). That Plaintiff was acquitted of the robbery charges at trial does not bar his claim. Douglas v. City of New York, 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009). Moreover, probable cause is not a defense to a denial of a fair trial claim. Heard v. City of New York, 319 F. Supp. 3d 687, 697 (S.D.N.Y. 2018). "Because probable cause is no defense to the denial of the right to a fair trial claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims." Hutchins v. Solomon, No. 16-CV-10029 (KMK), 2018 WL 4757970, at *16 (S.D.N.Y. Sept. 29, 2018) (citation omitted).

A claim for denial of a fair trial may be predicated upon either "affirmative misstatements" or "deliberate omissions of material facts." Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015). However, "omissions constitute fabrications only if they 'render an otherwise true statement false.'" Vasicka v. Kerwin, No. 18-CV-6858 (RPK)(SJB), 2022 WL 4641585, at *9 (E.D.N.Y. Sept. 30, 2022) (quoting Morse, 804 F.3d at 548). This can be satisfied only by "egregious conduct." Anilao v. Spota, 27 F.4th 855, 871 n.12 (2d Cir. 2022) (holding that DA's "wrongful refusal to disclose potentially exculpatory evidence to the grand jury" although "less than ideal," did not violate plaintiff's right to a fair trial); see also Sacaza v. City of New York, 22-CV-2954 (SJB), 2024 WL 4333688, at *10 & n.6 (E.D.N.Y. Sept. 26, 2024 (dismissing fair trial claim based on criminal complaint that accurately reported complaining witness's statements but did not mention that those statements were "contradicted by the surveillance footage").

Vega's felony complaint did not contain material misstatements. Plaintiff argues that the complaint inaccurately attributes the description of the assailant to Agosto, when in fact it was Robles who provided the description. This misstatement is not material because it would not have affected the jury's decision. Plaintiff also notes that the warrant states that Plaintiff took $20 from a table but Vega's memo book states that Robles "*gave* the suspect $20." Third Am. Compl. ¶ 22 (emphasis added).  However, there is no material difference between these two accounts—whether Plaintiff "took" the $20 or Robles "gave" it to him under duress or threat, the essential alleged facts remain the same: that Plaintiff purportedly stole $20 from Robles.

Finally, Vega's felony complaint did not contain omissions that rendered a true statement false. While Plaintiff argues that the omission of Agosto's alleged initial equivocal identification made the statement misleading, Agosto did eventually identify Plaintiff as the assailant. Plaintiff

18

does not demonstrate how the omission of Robles's refusal to cooperate rendered any statement in the complaint false.

I recommend that the Court grant the City Defendants' motion to dismiss Plaintiff's claim for violations of the right to a fair trial.

## CONCLUSION

I recommend GRANTING the City Defendants' motion to dismiss in full.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:     January 2, 2026
            New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have 14 days from the service of this Report and Recommendation to file written objections under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 6(a), 6(d). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2); see Fed. R. Civ. P. 6(a), 6(d). These objections shall be filed with the Court and served on any opposing parties. See Fed. R. Civ. P. 72(b)(2). Courtesy copies shall be delivered to the Honorable Jennifer H. Rearden if required by that judge's Individual Rules and Practices. Any requests for an extension of time for filing objections must be addressed to Judge Rearden. See Fed. R. Civ. P. 6(b). The failure to file timely objections will waive those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. James, 712 F.3d 79, 105 (2d Cir. 2013).